**IN THE UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF MISSOURI**
**SOUTHERN DIVISION**

| | |
|---|---|
| GRADY L. ROBINSON, <br><br> Plaintiff, <br><br> vs. <br><br> NANCY A. BERRYHILL, <br> Acting Commissioner of Social Security, <br><br> Defendant. | Civil Action No. 18-03112-CV-S-NKL-SSA |

## ORDER

Plaintiff Grady L. Robinson seeks review of the decision by Defendant denying his claim under Title II of the Social Security Act for disability insurance benefits. For the reasons set forth below, the Court affirms the ALJ's decision.

I. **BACKGROUND**

In September 2014, Robinson filed an application for disability insurance benefits on the basis of coronary artery disease, diabetes, post-traumatic stress disorder, hypertension, neuropathy, degenerative disc disease, sleep apnea, and hyperlipidemia. Tr. 60. Robinson, who was born in 1974, claimed that he became disabled on August 22, 2014. Tr. 20, 42.

Robinson's application for disability insurance benefits was initially denied on November 24, 2014. Tr. 60-67. After a January 19, 2017 hearing (Tr. 36-59), the Administrative Law Judge ("ALJ") found that Plaintiff retained the residual functional capacity ("RFC") to perform a range of light work with standing and walking each limited to four hours in an eight-hour workday and with an option to either sit or stand every 30 minutes. Tr. 23. Based on a vocational expert's testimony regarding jobs that one with such RFC could perform, the ALJ concluded that Plaintiff is capable of performing work that exists in significant numbers in the national economy and

1

therefore is not under a disability as defined in the Social Security Act. Tr. 31. The ALJ's decision, as the final decision by the commissioner, is subject to judicial review. Doc. 15, p. 3.

## II. STANDARD

The Court must affirm the Commissioner's denial of social security benefits "if substantial evidence in the record as a whole supports the ALJ's decision." *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). "Substantial evidence is less than a preponderance, but is enough so that a reasonable mind would find it adequate to support the ALJ's conclusion." *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000). The Court must consider both "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Id*. (quotation marks and citation omitted). However, "as long as substantial evidence in the record supports the Commissioner's decision, [the Court] may not reverse it because substantial evidence also exists in the record that would have supported a contrary outcome, or because [the Court] would have decided the case differently." *Andrews v. Colvin*, 791 F.3d 923, 928 (8th Cir. 2015) (quotation marks and citation omitted). The Court must "defer heavily to the findings and conclusions of the Social Security Administration." *Michel v. Colvin*, 640 F. App'x 585, 592 (8th Cir. 2016) (quotation marks and citations omitted).

## III. DISCUSSION

Robinson argues that the ALJ's RFC was in error because the ALJ "did not provide good reasons for rejecting Dr. Porter's opinion" and "failed to include" in the RFC a limitation with respect to "maintaining attention and concentration for extended periods . . . ." Doc. 10, p. 1. The Court considers each argument in turn.

2

### a. **Whether the ALJ Erred in Discounting the Opinion of Dr. Porter**

Robinson challenges the ALJ's conclusion that he retained the ability to perform light work with standing and walking each limited to four hours in an eight-hour workday and with an option to sit or stand every 30 minutes. Tr. 23. The basis for Robinson's challenge is the December 22, 2016 opinion by Matthew Porter, M.D., that Robinson is limited to, *inter alia*, sitting for ten minutes and standing for ten to fifteen minutes at one time without needing to change positions, and sitting or standing for no more than two hours in an eight-hour workday, and that he requires unscheduled breaks for fifteen to twenty minutes at a time, would be off-task from between 20-25% percent of the day, and would have frequent "bad days" resulting in his missing more than four days of work each month. Tr. 439-40. The ALJ rejected these limitations in Dr. Porter's opinion on the grounds that Dr. Porter did not explain the basis for the limitations, the opinion was the product of a "pre-printed 'check the block' form questionnaire," the limitations were inconsistent with Dr. Porter's medical treatment records, the limitations were inconsistent with the other objective evidence, and the limitations appeared to be based on Robinson's subjective complaints. Tr. 29.

Substantial evidence supports the ALJ's decision to give Dr. Porter's check-the-box form opinion limited weight. Dr. Porter began treating Robinson in June 2016, nearly two years after Robinson's alleged disability-onset date. Tr. 419; *see also* Doc. 10, p. 5. At that time, Robinson reported "NO acute symptoms currently." Tr. 419; *see also* Tr. 411 (July 26, 2016 record stating that "Pt is doing well, no complaints"). A month later, Dr. Porter reported that Robinson was "doing well" after stent placement. Tr. 412. Similarly, in early November and December 2016, Dr. Porter noted that Robinson was "in no acute distress" and "comfortable . . . ." Tr. 401 and 405. Nonetheless, on December 22, 2016, Dr. Porter completed the medical source statement indicating that Plaintiff could sit for only ten minutes at a time for a total of two hours in an eight-hour workday and could stand for only ten or fifteen minutes at a time for a total of two hours in an eight-hour workday, and that Plaintiff

would need additional breaks due to pain and side effects of medication and would be off-task 20-25% of the time, and would miss work or leave early because of his conditions more than four times a month. Tr. 439-40. These inconsistencies undermine Dr. Porter's opinion. *See Milam*, 794 F.3d at 983 ("A treating physician's own inconsistency may undermine his opinion and diminish or eliminate the weight given his opinions.") (quotation marks and citation omitted).

Moreover, Dr. Porter's opinion was based not on any examination findings (the records indicate that they were negative), but on Robinson's subjective reports. *See Reece v. Colvin*, 834 F.3d 904, 909 (8th Cir. 2016) (holding that an ALJ may give a treating physician's opinion less deference when it is based on a claimant's subjective complaints rather than objective medical evidence) (citation omitted).

The discounting of the claimant's subjective reports was justified here for the additional reason that there is ample evidence in the record of Mr. Robinson's noncompliance with recommended treatment. *See* Tr. 361 (August 28, 2014: "He voices his awareness of his non-compliance and he feels he should be more aware of his health care needs."), 366 (June 11, 2014: "Pt is here with his mom . . . as he has stopped taking all of his medications over six months ago. He claims he could not afford his medications however mom seems to feel he just stopped taking them."), 402 (December 1, 2016: "R[e]viewed with pt . . . importance of using cpap (issue with compliance in the past vs. mask not fitting properly)."), 405-06 (November 4, 2016 record: "He is not eating well, he is eating fast food and large colas" and "Reviewed diet at length with pt – pt states he eats fast food and will not change that."), 409 (July 26, 2016: "Patient counselled on the dangers of tobacco use and urged to quit. . . . Patient states he has been smoking more and needs to cut back again. –Educated on the need for this as his cardiologist is concerned and this is one of many things that is continually doing damage."), 415 (July 14, 2016: "He states he has been drinking a lot of Mt Dew and smoking a lot. He is eating out almost every meal and only is taking his insulin "when I remember[.]"), 429 (December 17, 2015 "He has not been taking any medication for 5 months."), 433 (June 18, 2015:

"States that he has not been taking his medications due to metformin 'tearing up my stomach'. He has not felt good so he 'just doesn't take any, I know that's not right to do'. States that . . . 'I don't take my blood sugars like I am supposed to'."), 581 (May 18, 2015: "Patient . . . reports he has partially been compliant with his current medication regimen . . . ."), 611 (June 14, 2016: "[P]atient admits to eating Mac and Cheese, regular soft drinks, sugared tea, and not taking his Toujeo."). *See Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) ("A failure to follow a recommended course of treatment also weighs against a claimant's credibility.").

Robinson claims that he had difficulty affording the prescribed treatments, but Robinson's noncompliance continued even when his medical providers attempted to provide him with free assistance and to adjust his medications to alleviate his financial concerns. *See* Tr. 363 (August 28, 2014: "I provided him with glucometer for free as he had disposed of his one at home (example of non-compliance on his part). I asked him to check his blood sugar once a day to conserve strips but to vary the time, eg. AM, HS, and before one meal. I will contact his cardiologist to see if he can change to a less expensive statin such as lovastatin."), 435 (June 18, 2015: "Encouraged patient to take medications as prescribed since changes have been made due to financial concerns and intolerance to metformin."). Furthermore, Robinson remained noncompliant even after he was found qualified for MO HealthNet medical coverage on March 1, 2016. Tr. 152; *see* Tr. 405-06 (November 4, 2016: "has OSA however pt states his cpap machine was taken away due to noncompliance"), 409 (July 26, 2016: "Patient was educated that he may take his Novolog with him as he was not taking it when he went out to eat, which is when he would benefit the most."), 412 (July 26, 2016: "Encouraged pt to bring his log in. Impossible to manage w/o log. May consider doing away with ISS as he is not in compliance with log."). *See Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) (noting that "[f]ailure to follow a prescribed course of remedial treatment without good reason is grounds for denying an application for benefits" and rejecting argument that "noncompliance [wa]s justified because [claimant] c[ould][ ]not afford the prescribed medication" where record showed she "had access to free samples of

5

hypertension drugs, sought medical treatment regularly, and had medical insurance coverage" for a number of years).

Finally, Robinson's daily activities, which include doing laundry, shopping, going out alone, and video games (Tr. 24, 40-41, 200-02), also undercut Dr. Porter's opinion that Robinson's capacity is extremely limited. *See Bryant v. Colvin*, 861 F.3d 779, 783-784 (8th Cir. 2017) (finding "[t]he RFC and credibility determinations of the ALJ" to be "well supported by substantial evidence" where, *inter alia*, "the ALJ considered [claimant's] daily activities including the facts that he lives alone, independently takes care of his personal needs, drives automobiles, shops, prepares meals, does his laundry, and occasionally attends church, among other activities.").

Thus, inconsistencies between Dr. Porter's opinion and his own records as well as other evidence lend substantial support to the ALJ's decision to discount the opinion. *See Toland v. Colvin*, 761 F.3d 931, 935-36 (8th Cir. 2014) (finding that ALJ "had sufficient reason to discount" physician opinion where "neither [the doctor's] treatment records nor the other medical evidence in the record provide[d] a medical justification for these restrictions").

Finally, given that Dr. Porter's check-box form opinions were unsupported by other medical records, it was appropriate for the ALJ to discount them. *See Cline v. Colvin*, 771 F.3d 1098, 1104 (8th Cir. 2014) ("While a checklist evaluation can be a source of objective medical evidence, we have upheld the decision to discount a treating physician's statement where the limitations listed on the form stand alone, and were never mentioned in the physician's numerous records of treatment nor supported by any objective testing or reasoning.") (quotation marks and citation omitted); *Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("The checklist format, generality, and incompleteness of the assessments limit the assessments' evidentiary value.") (quotation marks and citation omitted).

Although the records indicate that Robinson occasionally showed abnormalities in BMI, blood pressure, and A1c, Plaintiff does not argue in anything but conclusory fashion, let alone establish, that these factors would warrant additional functional limitations.

Thus, substantial evidence supports the ALJ's decision to discount the opinion of Dr. Porter.

### b. **Whether the ALJ Erred in Failing to Include a Limitation Regarding Maintaining Attention and Concentration for Extended Periods of Time**

Robinson complains that, although the ALJ concluded that he has "moderate difficulties with his capacity to understand, remember, and carry out detailed instructions and maintain attention and concentration for extended periods" (Tr. 22), the RFC did not include any limitation with respect to Robinson's ability to maintain attention and concentration for extended periods.

Robinson bears the burden of establishing that a more restrictive RFC was required. *See Mabry v. Colvin*, 815 F.3d 386, 390 (8th Cir. 2016) ("The claimant has the burden to establish his RFC."). However, Robinson did not seek treatment for any mental impairment, even after he became entitled to medical coverage through Mo HealthNet in March 2016. *See Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005) ("[T]here is no evidence Goff was ever denied medical treatment due to financial reasons."). Although a licensed professional counselor and a clinical psychologist concluded that Robinson did not "seem able to sustain his concentration and persistence on simple tasks" (Tr. 383), the ALJ properly gave their opinion little weight because it was inconsistent with their examination findings, which indicated no difficulties with concentration or attention and showed no other unremarkable mental examination results. *See* Tr. 382 (noting that rapport "was easily established," mood was "euthymic," "[a]ffect was consistent with conversation and facial expression," "[s]peech was clear and normally paced," and noting average intelligence and "good" judgment and "impulse control"). *See, e.g., Toland*, 761 F.3d at 935-36 (approving ALJ's discounting of opinion that was unsupported by provider's records or other medical evidence).

Furthermore, the limitations in the RFC to simple and routine tasks, occasional decision-making, occasional changes in the workplace, and occasional interaction with the public and co-

workers sufficiently addressed any difficulties with attention and concentration that the record may evidence.

Thus, substantial evidence supports the ALJ's finding with respect to Robinson's RFC.

IV. **CONCLUSION**

Because Robinson has not identified any aspect of the ALJ's decision that is unsupported by substantial evidence in the record, the Court affirms the ALJ's decision.


                                                     s/ Nanette K. Laughrey
                                                   NANETTE K. LAUGHREY
                                                   United States District Judge

Dated: December 19, 2018
Jefferson City, Missouri